## THE CITY OF MERIDEN *vs.* PETER ZWALNISKI ET ALS.

Third Judicial District, New Haven, June Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Where part only of a farm or of an entire tract of land is taken for public use, the amount of the damages or compensation to be awarded the landowner is the difference between the value of the entire farm or tract before the taking and the value of the remaining part or portion in view of the conditions created by the taking.

A depreciation in value of the remaining land, caused by an unfounded public belief that the contemplated improvement would lead to annoying official supervision and restrictions in the use of the unappropriated land, is not a damage resulting from the taking for which the condemnor is responsible, but is due to the ignorance, prejudice or folly of those who wrongly believe in an imaginary injury.

In the present case the city of Meriden, acting under its charter, condemned for its reservoir purposes a part of each of two farms owned in severalty by the respective respondents, and the committee appointed to determine the landowners' compensation for the taking allowed damages because the salability of the portion of each farm not taken was injuriously affected by the belief in the mind of the public that the construction and maintenance of the reservoir would impose annoying restrictions and unhealthful conditions upon the adjoining unappropriated lands, regardless of whether such beliefs were well-founded or not. *Held* that such damage was not the necessary, natural, or proximate result of the taking, and should not have been included in the sum awarded as compensation.

The charter of Meriden (8 Special Laws, p. 330, § 67) provides that the Superior Court may direct when and how the damages shall be paid, and that when paid the lands sought to be appropriated are taken. *Held* that this did not authorize a judgment and execution for the amount of the award with interest.

Argued June 3d—decided July 13th, 1914.

APPLICATION for the appointment of appraisers to estimate the damages sustained by the respective defendants from a taking of their lands by the plaintiff for reservoir purposes, brought to the Superior Court in

New Haven County where a committee was appointed (*Bennett, J.*) who heard the parties and reported the facts; the court (*Gager, J.*) overruled the plaintiff's remonstrance to the acceptance of the report, accepted the report and rendered judgment, in accordance therewith, in favor of the defendant Turner for $3,500, and (*Holcomb, J.*) in favor of the defendant Terrill for $4,500, from which the plaintiff appealed. *Error and cause remanded.*

Each of the respondents, Terrill and Turner, owned a farm in Cheshire where the basin of the proposed reservoir is located, a part only of which was taken by the applicant for the purposes of its reservoir. The remaining portions of their farms sloped toward the basin, and the buildings thereon were so located as to be near the border of the proposed reservoir when it should be constructed; the Terrill buildings being less than one thousand feet distant and the Turner buildings less than two hundred feet distant. The report showed that in reaching the amount of damages assessed in each case the committee deducted, from the value of the entire farm as one entire parcel of land appropriated to a single use at the time of the taking, the value of what remained after the portions had been appropriated by the applicant and in view of the new conditions created by the taking. "In determining this figure the committee took into consideration the loss of the land taken, not only as land but as an integral part of the farm, and the consequent injury to the owner in the efficient working of his farm; and it also took into consideration the natural slope of the land toward the proposed reservoir, and the loss in value due to the belief prevailing in the minds of the public, and therefore in the mind of an intending purchaser, that the presence of a large public reservoir for the storage of drinking water, situated adjacent to and within the

drainage of the remaining portion of the farm, would lead to annoying restrictions in and supervision of the use of the farm by the water and health officials of the city of Meriden; and further, the belief that the presence of the reservoir and the work done in its construction would create an unhealthful condition in the region for several years to come. The committee makes no attempt to decide whether such beliefs are well founded. It is sufficient to know that they exist, and must therefore affect the salability of the property. The committee declined to accede to the request of counsel for the applicant that they ignore all such evidence."

The remonstrance to this report was upon the ground that there was no evidence before the committee upon which it could find that a belief prevailed in the minds of the public that the presence of the reservoir would lead to the annoying restrictions and supervision mentioned, or that it would lead to unhealthy conditions. These allegations of the remonstrance were denied, and the issue thus raised was decided against the applicant by the judge who heard the remonstrance. The remonstrance also alleged error on the part of the committee in refusing to accede to the applicant's request to ignore this evidence, and in considering the beliefs of the public and intending purchasers that the presence of the reservoir would lead to the annoying restrictions and supervision mentioned, and to an unhealthful condition for several years to come. The court overruled these claims. From these rulings, and one allowing interest on the amount of the assessment in favor of Terrill from the date of the judgment, this appeal is taken.

*George D. Watrous* and *Alfred B. Aubrey*, for the appellant (plaintiff).

*Henry Stoddard* and *Howard C. Webb,* for the appellee (defendant Terrill).

*Frank D. Haines* and *Edwin S. Pickett,* for the appellee (defendant Turner).

THAYER, J. That the committee adopted the correct rule for assessing the damages to the respondents is not questioned on this appeal. The amounts which the respondents were entitled to recover were to be ascertained by comparing the values of the farms before the taking with the values of what was left after the taking, in view of the new conditions created by the taking. *New York, N. H. & H. R. Co.* v. *New Haven,* 81 Conn. 581, 583, 71 Atl. 780; 2 Lewis on Eminent Domain (3d Ed.) § 686; *Johnson* v. *Boston,* 130 Mass. 452, 454; *Lincoln* v. *Commonwealth,* 164 Mass. 368, 376, 41 N. E. 489; *Penney* v. *Commonwealth,* 173 Mass. 507, 509, 53 N. E. 865.

The remonstrance raised both questions of law and questions of fact, as grounds for asking the court to refuse to accept the report of the committee. Both related to the committee's action in considering the belief, which it found to exist in the public mind, that the presence of the reservoir would lead to annoying restrictions and supervision, and to unhealthful conditions, which affected the market value of the portion of the farms remaining to the respondents after a part had been taken by the appellant. The claim that there was no evidence that such a belief existed, was removed from the case as a question of fact by the court's finding that there was such evidence; and the same is true as to the claim stated in the remonstrance, that there was no evidence that unhealthful conditions were in fact likely to result. But this finding is important only as removing from the reach of this appeal any question upon

that ground of remonstrance. It lays no foundation for the claim that the belief in reference to the unhealthful condition to result from the construction of the reservoir and its presence was well founded. The committee reported in clear terms that it made no attempt to decide whether these beliefs were well founded. It therefore did not consider the testimony, which the court finds was before it, tending to show that the presence of the reservoir and its construction would create unhealthy conditions in the locality. The committee says in the report that it is enough to know that the beliefs exist and must therefore affect the salability of the property. This report as to its ruling was made, undoubtedly, because the claim had been made before the committee that the beliefs, whether well founded or not, were enough to affect the salability of the respondents' remaining property, and, having adopted this view against the request of the applicant's counsel, the committee very properly (*Fox* v. *South Norwalk*, 85 Conn. 237, 239, 82 Atl. 642) stated the facts in its report so as to present the correctness of the ruling as a question of law to be decided by the Superior Court. That court having sustained the committee's ruling, this appeal brings the same question before us for decision.

The report does not show what the annoying restrictions were which the public believed would follow from the creation of a reservoir below the respondents' lands, and, as we have already observed, it shows that the committee did not find that any unhealthy condition would be created by the construction and existence of the reservoir. There is nothing in the report to show that the public beliefs referred to were well founded and reasonable, or that they were not entirely unfounded and unreasonable, children of the imagination bred of ignorance or prejudice. It is said in behalf

of the respondents that the topographical situation of their lands is such that the entire drainage must be into the reservoir, and that the logical sequence is that this will lead to annoying restrictions, limitations, and supervision of the properties by the officials of the appellant city, and that the statutes of the State place restrictions upon the respondents' free use of their lands after the reservoir shall be in use, and that from the situation disclosed it thus appears that the beliefs referred to were not speculative or fanciful, but were well founded. It is also urged that the appellant made no attempt in the Superior Court to show that any substantial amount of damages was awarded for depreciation in the respondents' lands by reason of the existence of these beliefs, or to have the report recommitted with directions to the committee to state therein the amount which was allowed for depreciation by reason thereof. Either party could have asked for a recommittal of the report for this purpose. As neither party did so, we must take the record as we find it. We cannot assume that the committee made the finding which it did for the purpose of raising a merely academical question for the Superior Court to decide. Unless it allowed substantial damages on this account, there was no occasion for this finding, and if it considered that the beliefs were well founded, there was certainly no occasion for saying that no attempt was made to decide whether they were so, and that it was enough to know that the beliefs existed.

It is apparent from the report that the committee held that the taking and use of a portion of the respondents' lands as a reservoir caused a damage to their remaining lands because their salability was injuriously affected by the belief in the minds of the public that this taking and use would impose annoying restrictions and unhealthful conditions upon the other

lands, although such beliefs be false and unfounded. The only question before us is whether the Superior Court's action in overruling the remonstrance and sustaining this ruling of the committee was correct.

In *Cowper Essex* v. *Local Board for Acton*, L. R. 14 App. Cas. 153, 177, Lord Macnaghten uses this language: "It is said that the objection to a sewage farm comes from an unfounded apprehension of possible mischief. Does that matter? Call it what you will; ignorance, or prejudice, or fancy, the loss to the owner who may want to sell is not the less real. In such a case apprehension of mischief is damage of itself. And the depreciation in value must be the measure of compensation if the owner is to be compensated fairly." In the same case Lord Chancellor Halsbury in his opinion (p. 159) says: "I should hesitate very much to affirm the proposition that a belief in imaginary injury, though in fact an existing belief, and in fact affecting the marketable value of property, furnished any ground either for damages in an action or for compensation under the Lands Clauses Act." The question, although discussed by counsel and referred to in the opinions in that case, does not seem to have been decided; it appearing that the jury had found that the land taken for a sewage farm did in fact injuriously affect and thus depreciate the value of the claimant's remaining land. The case, which is cited by both appellant and appellees, is interesting as indicating the views of distinguished members of the judiciary, but it is not decisive of the question before us.

We think that a depreciation in value of the respondents' remaining lands, caused by an unfounded public belief, is not a damage caused by the applicant's taking of the other lands under its charter. If the belief was not well founded, then the taking and use for reservoir purposes of the other lands will not in fact

injure that which remains. What causes the damage to the latter is not the taking and use of the other lands, but the ignorance, prejudice, or folly of those who wrongly conceive and believe that it will cause them damage. Suppose the belief to be that, under § 2599 of the General Statutes (which is one of the statutes referred to by the respondents' counsel), the appellant's officers and agents have the power to restrict the use of the respondents' lands to forestry purposes, and to prohibit their use for agricultural purposes, and to prohibit the use of their dwellings for residential purposes. Such a belief would be wholly unfounded and easily proved to be so. A reference to the statute would show it to be false. If the rulings complained of are correct, the appellant may be compelled to pay for a depreciation in value caused by such belief, and is remediless. It is not permitted to prove that the belief is unfounded; or if proof is made that it is unfounded, that proof is not considered. That is immaterial. The fact of the belief exists, as the committee say, and that is enough. If witnesses upon the stand testified to their individual beliefs or opinions that these officers and agents had such powers under the statute, the appellant would be allowed to show that the belief was not well-founded but was ill-founded, and this would destroy the effect of their testimony. It cannot be permitted that, from such discredited witnesses, triers may find that such belief prevails in the mind of the public, and make the appellant responsible for the results of such belief. Such damage is not a necessary, natural, or proximate result of the taking. Something like this appears to have been done in the present case, for the court has found that there was evidence tending to show that unhealthy conditions would result from the presence of the reservoir in proximity to the respondents' land. Had this evidence

satisfied the committee that such conditions would in fact result from that cause, it would presumably have found the fact and the resulting depreciation in the value of the respondents' lands from that cause. That would show a well-founded belief on the part of the witnesses, and, if the belief was general in the public mind, a well-founded public belief. But it would be the fact that the reservoir really created the condition, and not the private or public belief that it did, which would entitle the respondents to damages.

The charter of the city of Meriden, under which these proceedings are had, provides that the court may direct when and in what manner the damages shall be paid, and that when they are paid the lands sought to be appropriated are and remain taken, etc. 8 Special Laws, p. 330, § 67. This gives no authority for a judgment for the amount of the award and for interest, and for the issuance of an execution for the enforcement of the judgment. The court, therefore, went beyond its powers in rendering judgment for the amount of the award and for interest, and that an execution issue therefor. *New Milford Water Co.* v. *Watson,* 75 Conn. 237, 251, 52 Atl. 947, 53 id. 57; *Fox* v. *South Norwalk,* 85 Conn. 237, 82 Atl. 642.

There is error, the judgment is reversed and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.